FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
**Nov 30, 2014**
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TUCKER McCARTHY, | ) | CIVIL 14-00310 LEK-RLP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HAWAIIAN PARASAIL, INC., ET AL., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendants Hawaiian Parasail, Inc. ("Hawaiian Parasail") and Mark Neumann's ("Neumann," collectively "Defendants") Motion for Summary Judgment ("Motion"), filed on July 30, 2014. [Dkt. no. 12.] Plaintiff Tucker McCarthy ("Plaintiff") filed his memorandum in opposition on September 29, 2014, and Defendants filed their reply on October 6, 2014. [Dkt. nos. 29, 30.] This matter came on for hearing on October 29, 2014. After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, Defendants' Motion is HEREBY GRANTED for the reasons set forth below.

## BACKGROUND

On February 14, 2014 Plaintiff first filed this lawsuit in the Circuit Court of the First Circuit for the State of Hawai`i. [Dkt. no. 1 (notice of removal), Exh. A.] On July 7, 2014, Defendants filed their Notice of Removal of State Court Action to Federal Court and, on July 10, 2014, Plaintiff filed

his First Amended Complaint ("the Complaint"), alleging that he was wrongfully retaliated against and terminated in violation of federal and state law. [Dkt. nos. 1, 8.] Plaintiff alleges that he was a seaman and deckhand employed by Hawaiian Parasail, a recreation tour business, and its owner and president, Neumann, from approximately 2008 until August 2013. [Complaint at ¶¶ 4-5, 7, 10-11.] He also alleges that: he worked over twenty hours per week, sometimes well over forty; he was paid in cash; and Defendants did not keep written records of hours worked or employee pay. [Id. at ¶¶ 16, 17.] Plaintiff further alleges that Defendants terminated him shortly after he complained about a lack of medical insurance and proper compensation, and that Neumman made misrepresentations to the State of Hawai`i Unemployment Insurance Division ("State UI Division") that Plaintiff had only been employed with him for a few months, which resulted in Plaintiff not receiving unemployment benefits. [Id. at ¶¶ 11, 18, 39.]

The Complaint alleges the following claims: violation of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, *et seq.* ("Count I"); retaliation against a whistleblower in violation of the Hawai`i Whistleblower Protection Act ("HWPA"), Haw. Rev. Stat. § 378-1, *et seq.* ("Count II"); wrongful discharge in violation of public policy, pursuant to Parnar v. Americana Hotels, Inc., 65 Haw. 370, 652

2

P.2d 625 (1982) ("Count III"); breach of the implied covenant of

good faith and fair dealing ("Count IV"); unjust enrichment

("Count V"); and intentional interference with prospective

economic advantage ("Count VI"). Plaintiff seeks the following

relief: general and special damages; punitive damages; a

declaratory judgment requiring reinstatement and back pay,

including "fringe benefits and seniority rights[;]" a declaratory

judgment prohibiting Defendants from further violating Hawai`i

law "with respect to providing medical insurance[;]" civil

penalties and all other remedies available under ERISA;

reasonable attorneys' fees and costs; pre- and post-judgment

interest; and all other appropriate relief. [Complaint at pgs.

11-12.]

### DISCUSSION

**I.** **Count I**

Plaintiff alleges that Defendants violated ERISA by

terminating him in retaliation for his complaints about not

receiving medical insurance. 29 U.S.C. § 1140 provides, in

pertinent part:

> It shall be unlawful for any person to discharge,
> fine, suspend, expel, discipline, or discriminate
> against a participant or beneficiary for
> exercising any right to which he is entitled under
> the provisions of an employee benefit plan, this
> subchapter, section 1201 of this title, or the
> Welfare and Pension Plans Disclosure Act, or for
> the purpose of interfering with the attainment of
> any right to which such participant may become
> entitled under the plan, this subchapter, or the

Welfare and Pension Plans Disclosure Act.[1]

One district court within the Ninth Circuit recently summarized

the burden-shifting standard for ERISA claims:

> A retaliation claim under § 1140 is assessed under
> the "McDonnell Douglas burden-shifting framework."
> See Lessard v. Applied Risk Mgmt., 307 F.3d 1020,
> 1025 and n.3 (9th Cir. 2002) (citing McDonnell
> Douglas Corp. v. Green, 411 U.S. 792 (1973)).
> Under said framework, the "plaintiff must first
> establish a prima facie case of retaliation by
> showing that [he] engaged in a protected activity,
> that [he] was thereafter subjected by [his]
> employer to [an] adverse employment action, and
> that a causal link exists between the two." See
> Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th
> Cir. 1982). "Once the plaintiff has established a
> prima facie case, the burden of production
> devolves upon the defendant to articulate some
> legitimate, non-retaliatory reason for the adverse
> action." Id. "If the defendant meets this burden,
> the plaintiff must then show that the asserted
> reason was a pretext for retaliation." Id.

Pizza v. Fin. Indus. Regulatory Auth., Inc., No.C-13-0688 MMC,

2014 WL 2450863, at *5 (N.D. Cal. May 30, 2014) (some alterations

in Pizza).

For the purposes of the Motion, Defendants do not

contest that Plaintiff can make a prima facie case, and instead

argue that they had legitimate, non-retaliatory reasons for

terminating Plaintiff. [Mem. in Supp. of Motion at 3-4.[2]] They

---

[1] Defendants do not contest in their memoranda that
Plaintiff was exercising a right covered by ERISA.

[2] Defendants filed an amended memorandum in support of the
Motion on July 31, 2014. [Dkt. no. 17.] All references to the
memorandum in support of the Motion are to that version of the

(continued...)

provide the following rationale:

- Neumann received complaints that Plaintiff used foul language
  when he got a small tip from customers, as documented in a
  June 16, 2012 memorandum from Neumann to Plaintiff; [Defs.'
  Concise Statement of Facts in Support of Motion for Summary
  Judgment ("Defs.' CSOF"), filed 7/30/14 (dkt. no. 13), Decl.
  of Mark Neumann ("Neumann Decl.") at ¶ 7, Exh. C (6/16/2012
  Mem. from Management to Tucker McCarthy re Verbal Abuse to
  Customers ("6/16/12 Mem."));]

- Neumann received complaints that Plaintiff passed gas loudly in
  the presence of co-workers and customers and laughed about
  it; [Neumann Decl. at ¶ 9;]

- Plaintiff showed up for work in a stained and wrinkled uniform
  on several occasions, refused to work with certain captains,
  and changed the days he said he was available to work, which
  placed significant strain on Hawaiian Parasail; [id. at
  ¶¶ 10-11;]

- Plaintiff took excessive days off in 2013, including during the
  busiest times of year (July, September, Thanksgiving, and
  Christmas), which was prohibited; [id. at ¶¶ 5, 12, 14, Exh.
  D (note requesting September 5-9, November 25-December 2,
  and December 20-31 off);] and

- Neumann terminated Plaintiff for these reasons, because he
  places significant emphasis on professionalism and customer
  service [Neumann Decl. at ¶ 18, Exh. F (9/1/13 letter from
  Neumann to Plaintiff ("Termination Letter"))].

Defendants argue that this misconduct violated Hawaiian

Parasail's Company Policy ("Company Policy"), [Neumann Decl. at

¶ 4, Exh. B (Company Policy),] and that Neumann documented these

reasons in the Termination Letter.

        In response, Plaintiff argues that Defendants' reasons

are pretextual. Specifically, he argues that: he did not commit

---

        [2](...continued)
memorandum.

the acts of misconduct and there is no evidence, other than Neumann's conclusory statements, that he did; he was never advised that he had purportedly violated company policy; other employees who engaged in the same conduct, including requesting time off in the same manner as Plaintiff did, were not terminated; and the purported reasons were not the true reasons, and the timing of his termination provides circumstantial evidence that the real reason was his complaints regarding medical insurance. [Mem. in Opp. at 11-17.]

The Ninth Circuit has described the burden regarding pretext at summary judgment:

> To survive summary judgment at the pretext stage, a plaintiff "must produce sufficient evidence to raise a genuine issue of material fact as to whether the employer's proffered nondiscriminatory reason is merely a pretext for discrimination." Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1037 (9th Cir. 2005). "The plaintiff can prove pretext (1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1194 (9th Cir. 2003) (internal quotation marks and citation omitted). "All of the evidence — whether direct or indirect — is to be considered cumulatively." Id. The amount of evidence required to avoid summary judgment is "minimal." Nicholson v. Hyannis Air Serv., Inc., 580 F.3d 1116, 1127 (9th Cir. 2009). "We have held that very little evidence is necessary to raise a genuine issue of fact regarding an employer's motive; any indication of discriminatory motive may suffice to raise a question that can only be resolved by a fact-finder." Id. (citation omitted).

<u>Teutscher v. Riverside Sheriffs Ass'n</u>, 492 F. App'x 719, 720 (9th Cir. 2012).  On the other hand, the Ninth Circuit has also held that, "[c]ircumstantial evidence of pretext must be specific and substantial in order to survive summary judgment."  <u>Bergene v. Salt River Project Agric. Improvement & Power Dist.</u>, 272 F.3d 1136, 1142 (9th Cir. 2001) (citation omitted).  To support his pretext argument, Plaintiff offers the following indirect evidence, based on his declaration and the declaration of former Hawaiian Parasail General Manager, Wade Vicilius:

- Plaintiff did not receive the Company Policy until after he filed the present lawsuit; [Pltf.'s Concise Statement in Opposition to Defs.' Motion for Summary Judgment ("Pltf.'s CSOF"), filed 9/29/14 (dkt. no. 29-1), Decl. of Tucker McCarthy ("McCarthy Decl.") at ¶ 9;]

- Plaintiff never received the 6/16/12 Memorandum, and neither Neumann nor any other Hawaiian Parasail employee ever accused Plaintiff of misconduct or improper use of leave prior to the Termination Letter; [<u>id.</u> at ¶¶ 10, 19; Pltf.'s CSOF, Decl. of Wade Vacilius ("Vacilius Decl.") at ¶ 4 (stating that he was not aware of any disciplinary action taken against Plaintiff);]

- Plaintiff never used foul language or passed gas in front of customers or employees, his work shirts were "always clean as they could be," he never refused to work with any coworkers, and he did not dictate his schedule, but rather made requests for time off or to make schedule changes; [McCarthy Decl. at ¶¶ 11, 15-16; Vacilius Decl. at ¶ 4 (attesting that he never observed any misconduct by Plaintiff);]

- Hawaiian Parasail did not post the policy or tell Plaintiff or other employees that taking time off in June through September was prohibited, and, in any event, Plaintiff received authorization from Hawaiian Parasail's manager for all time off (including the September days) more than a month before, left a note with his dates in the office, and arranged coverage for his shift, as was standard policy;

[McCarthy Decl. at ¶¶ 12-14, 16; Vacilius Decl. at ¶ 8 (attesting that this was the usual practice for time off);]

- no other employee was ever disciplined for following the same protocol as Plaintiff for time off (even when that time was during the busy season), or wearing wrinkled or dirty clothes; [McCarthy Decl. at ¶¶ 17-18;]

- in May 2013, Neumann placed Plaintiff on payroll as a "new" employee, ineligible for health insurance for ninety days, and terminated him before he received those benefits; [id. at ¶¶ 4, 7;]

- in late August 2014, Plaintiff had an argument with Neumann over medical benefits, in which he questioned whether Hawaii Parasail was required to provide health coverage for all employees who worked over twenty hours per week and requested wage documentation from 2008-2013 so he could complete his taxes; Neumann responded that, if he did not like the policy, Plaintiff should "work somewhere else," and two weeks later Neumann terminated him [id. at ¶¶ 5-6].

In reply, Defendants argue that: Plaintiff has not shown that Neumann did not honestly believe the non-retaliatory reasons he gave for terminating Plaintiff; Plaintiff does not deny that he planned to take more than twenty-five days off in the second half of 2013, and that most of those days were during the busiest times of year; and there is evidence that Neumann terminated other employees who did not engage in protected activity for lesser and similar offenses. [Reply at 6-9.]

Regarding his honest belief concerning the justification, Defendants offer the Termination Letter, which gives multiple reasons for Neumann's decision to terminate Plaintiff, including the required changes to Plaintiff's schedule, his wrinkled and dirty uniforms, and Plaintiff's

8

resistence to working with colleagues. While Plaintiff denies that he engaged in these behaviors, [McCarthy Decl. at ¶¶ 11, 15, 16,] the majority of the letter discusses Plaintiff's absenteeism, which Plaintiff does not deny.[3] While there is some discussion of the protocol for requesting leave and the purported prohibition on leave during the busy times of year, the thrust of the letter is that Neumann believed that Plaintiff was requesting too much time off at times inconvenient for his company, and this showed a lack of respect and commitment to Neumann and Hawaiian Parasail. The letter states:

> Prior to summer, I posted a sign in the ticket booth next to your work schedule notifying all employees they must not take time off during the summer months.[[4]] This summer was thought to be the busiest ever and just before this summer I lost a full time captain and full time captain/crew. While I quickly hired a new crew and captain it still left me short on captains and left me with the bare minimum on crew. You took

---

[3] The Court questions whether Plaintiff's denials of the other acts of misconduct alone are sufficient to create a genuine issue of material fact. See Nilsson v. City of Mesa, 503 F.3d 947, 952 (9th Cir. 2007) ("[A] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." (citation and internal quotation marks omitted)). However, even crediting those denials, Plaintiff still does not create a genuine dispute as to pretext, as discussed more fully *infra*.

[4] Both Plaintiff and Vacilius deny that there was ever a sign posted. [McCarthy Decl. at ¶ 12; Vacilius Decl. at ¶ 9.] The Court notes that Vacilius attests that he worked for Hawaiian Parasail until approximately June 2013, and therefore he may have left the company before Neumann posted the sign. Again, even assuming there is a genuine issue as to the sign, Plaintiff does not satisfy his burden on pretext.

time off from work during the busiest time of the summer, in July, while I was short handed causing much stress and having the van driver work crew in your replacement.

Now you are about to do the same unacceptable and irresponsible act as you have done before, that of thinking you are covering your absence from your scheduled work days by notifying me that another employee will work those days you are intending to be absent from, while that employee is already scheduled to work on the other boat for those days.

Then again you have served notice that you intend to be absent from work for a week from November 25th – December 2nd. Then again your notice states that you intend to be absent from December 20th – 31st, the busiest time of the off season. You seem to think that your job is something that waits around for you and that you can take off from work as many times a year and at any time you wish. This is totally unacceptable and disrespectful to the needs of the company that depends on you.

[Termination Letter at 11013300021-22.] Plaintiff does not deny that he: requested time off during the summer, in September, over Thanksgiving, and Christmas – all in the same year; knew these times were the busiest times of year; and knew that this might put stress on Hawaiian Parasail. Nor does he provide any evidence, other than the timing between the purported argument over benefits and pay statements and his termination, [McCarthy Decl. at ¶¶ 4-5,] and statements that Neumann is a liar, [id. at ¶ 22; Vacilius Decl. at ¶ 11,] to show that Neumann did not honestly believe that Plaintiff's absenteeism was a problem for Neumann and he did not terminate Plaintiff because of it.

First, as Plaintiff concedes, and this Court agrees, "proximity [in time] alone is not enough to establish pretext[.]" Mem. in Opp. at 16; see also, e.g., Hooker v. Parker Hannifin Corp., 548 F. App'x 368, 370-71 (9th Cir. 2013) ("While evidence of temporal proximity is sufficient to demonstrate a prima facie case of retaliation, the first step in the McDonnell Douglas burden-shifting test, it is ordinarily insufficient to satisfy the secondary burden to provide evidence of pretext." (citation omitted)).

Second, a self-serving declaration that the employer is not telling the truth or is a liar does not create a genuine issue of material fact as to whether the employer's justification is pretextual. See Nilsson, 503 F.3d at 952; Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1116 (9th Cir. 2003) ("conclusory allegations, unsupported by facts, are insufficient to survive a motion for summary judgment" (citation omitted)).

Third, and related, Plaintiff has not put forth any evidence that Neumann did not subjectively believe his purported explanation that he was terminating Plaintiff because of excessive and poorly timed absences. This Court has explained that, "'it is not important whether [the proffered reasons] were objectively false. . . . Rather, courts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless.'" Marugame v.

Napolitano, Civil No. 11-00710 LEK-BMK, 2013 WL 4608079, at *22 (D. Hawai`i Aug. 28, 2013) (alteration in Maruqame) (quoting Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir. 2002)).  Plaintiff here has not "identif[ied] sufficient evidence to create a genuine issue of material fact as to whether [Neumann] honestly believed the stated reasons for the [termination]."  See id.

In sum, as to pretext, Plaintiff has offered no evidence to demonstrate that "(1) [Defendants'] proffered reason is unworthy of credence; or (2) retaliation was the more likely motivation."  Brooks v. Capistrano Unified Sch. Dist., 1 F. Supp. 3d 1029, 1038 (C.D. Cal. 2014) (citing Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062-63 (9th Cir. 2002)).  Thus, under either standard, compare Teutscher, 492 F. App'x at 720 ("any indication of discriminatory motive may suffice"); with Berqene, 272 F.3d at 1142 (evidence must be "specific and substantial"), Plaintiff has failed to provide sufficient evidence of pretext.

Further, Defendants have offered evidence that similarly situated individuals were treated the same as Plaintiff.  Neumann attests that he terminated two employees for, in essence, bad attitudes, and neither had engaged in purportedly protected activity.[5]  [Neumann Decl. at ¶¶ 22-24.]  Plaintiff

---

[5] Neumann states that he terminated an employee because he "received complaints that [the employee] was mean and grouchy to (continued...)

12

does not dispute that these employees were similarly situated to him.[6]  This Court has found a lack of pretext at summary judgment on precisely this basis.  See Marugame, 2013 WL 4608079, at *23 ("Perhaps the most telling evidence which prevents Plaintiff from showing a genuine issue of fact as to pretext is the fact that [coworker] Cox, who did not engage in a protected activity, received the same discipline for the same reasons as Plaintiff[.]").  As the Ninth Circuit has explained, such a showing "negates" any claim by Plaintiff of pretext.  DiDiana v. Parball Corp., 472 F. App'x 680, 681 (9th Cir. 2012) ("Because 'at least one other similarly situated employee . . . was treated in a similar manner as [DiDiana],' that evidence negates 'any showing of pretext' and therefore defeats DiDiana's claim." (alterations in Didiana) (quoting Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1094 (9th Cir. 2001)).

_____

[5](...continued)
customers," and he terminated another one because the employee "refused to accept a disciplinary memorandum that [Neumann's] staff attempted to give [the employee], told the office manager that [Neumann] was a coward for not personally handing [the employee] the memorandum, and refused to accept revised Safety Instructions for boat captains that [Neumann] attempted to give to him weeks later."  [Neumann Decl. at ¶¶ 22-23.]

[6] Instead Plaintiff focuses his argument on his claims that no other employee was terminated for following the leave request policy he followed or disciplined for wearing wrinkled and dirty clothing.  [Mem. in Opp. at 15-16.]  However, as discussed above, those are only two of the reasons given by Neumann.  Thus, disputing those elements does not create a genuine issue as to the employees terminated for bad attitudes.

Since Plaintiff has neither provided any evidence, other than timing, of pretext, nor rebutted Neumann's stated reason of terminating Plaintiff for, *inter alia*, excessive absenteeism, and Defendants have rebutted any showing of pretext through evidence regarding similarly situated employees, there is no genuine issue of material fact as to pretext. The Court, thus, GRANTS the Motion as to Count I.

## II. <u>Count II</u>

Plaintiff argues that Defendants violated HWPA by retaliating against him for reporting to "Defendants perceived violations of state law – to wit failure to provide wage statements in compliance with Hawaii law."[7] [Mem. in Opp. at 25 (citing HRS 387-6(c), which requires providing pay information to employees every pay period).] Haw. Rev. Stat. § 378-62 provides in pertinent part:

_____

[7] Plaintiff appears to fashion his HWPA and <u>Parnar</u> claims so as to avoid preemption by ERISA, which was the basis for dismissal of those claims in the state court before removal. <u>See</u> Mem. in Opp. at 6 n.1 (reporting that summary judgment was granted "for causes of action under HWPA and other theories that alleged retaliation based on failure to provide medical coverage, which the circuit court held were preempted by ERISA"). Insofar as he alleges violations for complaining about not providing health insurance, the Court finds that the claims are preempted by ERISA. In his memorandum in opposition, Plaintiff further narrows the basis for Counts II and III from his allegations that the retaliation was based on complaints about overtime. Defendants surmise that this change is a concession that the overtime requirements of 29 U.S.C. § 207 do not apply to seamen. [Mem. in Supp. of Motion at 10 (citing 29 U.S.C. § 213(b)(6)).] Even reading the allegations broadly as Plaintiff argues this Court should, Counts II and III still do not avoid dismissal.

An employer shall not discharge, threaten, or
otherwise discriminate against an employee
regarding the employee's compensation, terms,
conditions, location, or privileges of employment
because:

> (1) The employee, or a person acting on
> behalf of the employee, reports or is about
> to report to the employer, or reports or is
> about to report to a public body, verbally or
> in writing, a violation or a suspected
> violation of:
>
>> (A) A law, rule, ordinance, or
>> regulation, adopted pursuant to law of
>> this State, a political subdivision of
>> this State, or the United States[.]

"A HWPA claim contains the following three elements:
(1) the employee engaged in protected conduct as it is defined by
the HWPA; (2) the employer has taken some adverse action against
the employee; and (3) there is a causal connection between the
alleged retaliation and the 'whistleblowing.'" <u>Casumpang v.
Hawaiian Commercial & Sugar Co.</u>, Civil No. 12-00694 ACK-BMK, 2014
WL 4322168, at *13 (D. Hawai`i Aug. 29, 2014) (citations
omitted).

First, the Court questions whether Plaintiff engaged in
cognizable protected activity under HWPA.  Plaintiff states in
his declaration that he "asked about getting wage statements and
documentation about [his] wages and deductions from past years
(2008-2013) so [he] could complete [his] taxes for past years"
and he "told Mark Neumann that [he] thought the law said
[Neumann] was supposed to provide this information to all

15

employees for all years worked, not just for the time [he] was on payroll." [McCarthy Decl. at ¶ 6.] This does not meet the plain language of the statute that prohibits termination of an employee who "reports or is about to report to the employer . . . a violation or a suspected violation of . . . [a] law[.]" <u>See</u> § 378-62(1)(A). Plaintiff's evidence shows that he questioned Neumann about his practices, not that he was reporting or planning to report a violation of the law.

Further, as with Count I, even if Plaintiff's discussion with Neumann could be construed as protected activity, he has failed to create a genuine issue as to Defendants' legitimate non-discriminatory reason for terminating him.[8] <u>See, e.g.</u>, <u>Taguchi v. State, Dep't of Health</u>, 2012 WL 5676833 (Hawai`i Ct. App. Nov. 15, 2012) (applying burden shifting analysis to HWPA claim). Thus, for the same reasons as with Count I, summary judgment is warranted on this basis as well. The Court therefore GRANTS the Motion as to Count II.

## III. **Count III**

Plaintiff argues that his wage statement complaints also provide the basis for his <u>Parnar</u> claim. [Mem. in Opp. at 25.] This Court recently found:

In <u>Parnar v. Americana Hotels, Inc.</u>, 65 Haw.

---

[8] The Court agrees with Defendants that the evidence Plaintiff presents in his declaration is indirect evidence and thus the <u>McDonnell Douglas</u> burden shifting analysis applies.

370, 652 P.2d 625 (1982), the Hawai`i Supreme Court adopted a common law tort, whereby an individual may bring a claim against an employer if her discharge directly violates clear public policy. The court explained,

> Because the courts are a proper forum for modification of the judicially created at-will doctrine, it is appropriate that we correct inequities resulting from harsh application of the doctrine by recognizing its inapplicability in a narrow class of cases. The public policy exception discussed herein represents wise and progressive social policy which both addresses the need for greater job security and preserves to the employer sufficient latitude to maintain profitable and efficient business operations. We therefore hold that an employer may be held liable in tort where his discharge of an employee violates a clear mandate of public policy. In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme. Prior judicial decisions may also establish the relevant public policy. However, courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject. Of course, the plaintiff alleging a retaliatory discharge bears the burden of proving that the discharge violates a clear mandate of public policy.

Id. at 379-80, 652 P.2d at 631 (footnotes omitted). "Parnar claims can only be maintained in a 'narrow class of cases' where the judicially created wrongful discharge action is needed to effectuate the public policy at stake." Cambron v. Starwood Vacation Ownership, Inc., 945 F. Supp. 2d 1133, 1141-42 (D. Hawai`i 2013) (citing Ross v. Stouffer Hotel Co., 76 Hawai`i 454, 879 P.2d 1037, 1047 (1994)).

Ritchie v. Hawai`i, Civil No. 14-00046 LEK-BMK, 2014 WL 4905336,

at *9-10 (D. Hawai`i Sept. 30, 2014).

Further, courts regularly reject <u>Parnar</u> claims where there is already a remedial scheme protecting the employee against the purported violation at issue.  <u>See, e.g.</u>, <u>Patrick v. 3D Holdings, LLC</u>, Civil No. 13-00638 JMS/KSC, 2014 WL 1094917, at *12 (D. Hawai`i Mar. 18, 2014) (citing <u>Hughes v. Mayoral</u>, 721 F. Supp. 2d. 947, 962 (D. Haw. 2010) ("Plaintiff cannot state a claim for wrongful termination in violation of public policy [under <u>Parnar</u>] based on the same conduct as his Title VII and HRS § 378 claims because these statutes already provide a sufficient remedy." (alteration in <u>Patrick</u>)); <u>Ross</u>, 76 Hawai`i at 464, 879 P.2d at 1047 ("By making the discharge of an employee 'because of . . . [his or her] marital status' unlawful, HRS § 378-2(1), and providing a remedial scheme for that discriminatory employment practice, the legislature itself has provided the means for enforcing the public policy that Ross seeks to vindicate through his <u>Parnar</u> claim." (alterations in <u>Ross</u>)).

To prevail on a <u>Parnar</u> claim, Plaintiff must demonstrate he: (1) engaged in a protected activity such as refusing to commit an unlawful act, performing an important public obligation such as whistle blowing, or exercising a statutory right; (2) he was terminated because of this protected activity; and (3) the termination violated a clear mandate of public policy.  <u>See</u> <u>Villiarimo</u>, 281 F.3d at 1067.

Plaintiff cannot sustain his _Parnar_ claim for two reasons. First, as with his HWPA claim, Plaintiff did not engage in a protected activity under _Parnar_. Second, Haw. Rev. Stat. Chapter 387 already provides an enforcement mechanism for § 387-6(c). Haw. Rev. Stat. § 387-12(a) states, in part:

"any employer . . . who discharges . . . any employee because the employee has made a complaint to the employee's employer . . . that the employee has not been paid wages in accordance with this chapter . . . shall be guilty of a misdemeanor . . . ." This district court have concluded that, "courts do not recognize _Parnar_ claims where — like here — the public policy at issue is contained in a statute, if that statutory scheme provides a remedy for violations of that policy." _Batacan v. Reliant Pharm._, 324 F. Supp. 2d 1144, 1145 (D. Hawai`i 2004). For both of these reasons, the Court GRANTS the Motion as to Count III.[9]

## IV. __Count IV__

Defendants argue that the tort of bad faith does not apply in the at-will context. This Court agrees.

The Hawai`i Supreme Court first recognized the tort of bad faith in _Best Place, Inc. v. Penn America Insurance Co._ See

---

[9] The Court agrees with Defendants that it would make sense to apply the _McDonnell Douglas_ burden-shifting analysis to _Parnar_ claims as well, but it is not aware of any case, and Defendants do not provide any, that does so.

82 Hawai`i 120, 132, 920 P.2d 334, 346 (1996) ("[W]e hold that there is a legal duty, implied in a first-and third-party insurance contract, that the insurer must act in good faith in dealing with its insured, and a breach of that duty of good faith gives rise to an independent tort cause of action."). However, the Court recognized an exception to this rule:

> One exception to this well established principle of contract law is the at-will employment doctrine. In <u>Parnar v. Americana Hotels</u>, 65 Haw. 370, 652 P.2d 625 (1982), we noted that an at-will employment contract, by definition, is terminable at the will of either party, for any reason or no reason at all. As such, parties to an at-will employment contract enter into the contract with full knowledge that the employment is for an indefinite duration and can terminate at the will of either party. Given the unique nature of the at-will employment relationship, this court refused to imply a duty to terminate in good faith. Our holding in <u>Parnar</u>, however, is limited to the at-will employment context, and Hawai`i continues to adhere to the general principle that, in every contract, the law imposes on the parties a duty of good faith and fair dealing.

<u>Id.</u> at 124 n.5, 920 P.2d at 338 n.5. Defendants point out that Hawai`i courts have applied the exemption from <u>Parnar</u> in cases where there was no allegation of wrongful discharge. [Reply at 14 (citing <u>Snider v. Crimson Enterprises, Inc.</u>, 768 F. Supp. 734, 740 (D. Haw. 1991)).] Based on the reasoning of <u>Parnar</u> and <u>Best Place</u>, the Court rejects Plaintiff's argument that the duty of good faith applies to an at-will employment relationship. It therefore GRANTS the Motion as to Count IV.

**V.   Count V**

Defendant argues that Plaintiff's claim for unjust enrichment fails as a matter of law because Plaintiff has not pled any facts to show that his compensation was unjust, or how Defendants were unjustly enriched by not providing wage statements to Plaintiff.  [Mem. in Supp. of Motion at 13-14; Reply at 14.]  Plaintiff mistakenly states that Defendants did not move for summary judgment on Count V.  [Mem. in Opp. at 7.] However, even if he had opposed the Motion on this count, this Court would still conclude that his unjust enrichment claim fails.

> The Hawai`i Supreme Court has held:

> A claim for unjust enrichment permits a party to
> seek restitution for benefits improperly conferred
> on an opposing party as a result of a wrongful
> act.  Porter v. Hu, 116 Hawai`i 42, 55, 169 P.3d
> 994, 1007 (App. 2007) (citing Durette v. Aloha
> Plastic Recycling, 105 Hawai`i 490, 100 P.3d 60
> (2004)).  In deciding whether a party is entitled
> to restitution, the court is guided by its
> objective to prevent injustice.  Small v.
> Badenhop, 67 Haw. 626, 636, 701 P.2d 647, 654
> (1985) ("One who receives a benefit is of course
> enriched, and he would be unjustly enriched if its
> retention would be unjust." (Citation omitted.)).

Hawaiian Ass'n of Seventh-Day Adventists v. Wong, 130 Hawai`i 36, 49, 305 P.3d 452, 465 (2013).  The Court agrees with Defendants that Plaintiff has provided no evidence that any benefit to which he was entitled was improperly conferred on Defendants.  As such, the Court GRANTS the Motion as to Count V.

**VI.  Count VI**

Plaintiff argues that there is undisputed evidence that Neumann interfered with Plaintiff's ability to collect unemployment benefits and, even though he ultimately prevailed on appeal, he is entitled to punitive damages for the violation. [Mem. in Opp. at 31.]  The Hawai`i Supreme Court has held:

> The elements of the tort of intentional interference with prospective business advantage are:
>
>> (1) the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff; (2) knowledge of the relationship, advantage, or expectancy by the defendant; (3) a purposeful intent to interfere with the relationship, advantage, or expectancy; (4) legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and (5) actual damages.

Minton v. Quintal, 131 Hawai`i 167, 191, 317 P.3d 1, 25 (2013) (citations omitted).  Plaintiff's claim fails because: Neumann terminated Plaintiff for misconduct, and thus Plaintiff had no prospective expectancy in unemployment; see Lee v. Hawaii Pac. Univ., Civil No. 12-00604 BMK, 2014 WL 794661, at *8 (D. Hawai`i Feb. 26, 2014) (finding that the plaintiff did not "have a 'prospective advantage or expectancy' that [was] reasonably probable to mature into 'future economic benefit' given that [Haw. Rev. Stat.] § 383-30(2) expressly disqualifies employees

22

discharged for misconduct from receiving unemployment benefits"); the initial denial of the claim was based on Plaintiff's misconduct and not any purported lies Neumann told about how long Plaintiff had been employed with Hawaiian Parasail as Plaintiff now argues; [Defs.' CSOF at ¶ 20 (stating that State UI Division denied Plaintiff benefits "because it found that [Plaintiff] was terminated for misconduct connected with work"); Pltf.'s CSOF at ¶ 20 (disputing whether Neumann told the truth, but not the basis for the State UI Division's decision);] and Plaintiff concedes that he received unemployment benefits, [Pltf.'s CSOF at ¶ 21 (admitting that the State UI Division awarded him benefits),] and, therefore, there are no actual damages. Since there is no genuine issue of fact as to three elements of the claim, the Court GRANTS summary judgment for Defendants on Count VI.

## CONCLUSION

On the basis of the foregoing, Defendants' Motion for Summary Judgment, filed July 30, 2014, is HEREBY GRANTED in its entirety. There being no remaining claims in this case, the Court DIRECTS the Clerk's Office to enter judgment and close the case on **December 20, 2014**, unless Plaintiff files a timely motion

for reconsideration of the instant Order.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, November 30, 2014.



  /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

TUCKER McCARTHY V. HAWAIIAN PARASAIL, INC., ET AL.; CIVIL 14-00310 LEK-RLP; ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

24